# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

| | |
|---|---|
| AMELIA ESCOBAR, | |
| Plaintiff, | **Case No**.: 2:24-cv-470 |
| v. | |
| EXPERIAN INFORMATION SOLUTIONS, INC., EQUIFAX INFORMATION SERVICES, LLC TRANS UNION LLC., NISSAN MOTOR ACCEPTANCE COMPANY LLC, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## COMPLAINT

Amelia Escobar ("Plaintiff" or "Ms. Escobar"), by and through the undersigned counsel, brings this action on an individual basis, against Equifax Information Services, LLC ("Equifax" or "Defendant Equifax"); Experian Information Solutions, Inc. ("Experian" or "Defendant Experian"); Trans Union LLC ("Trans Union" or "Defendant Trans Union, and collectively with Equifax and Experian, the "Credit Bureau Defendants"); and Nissan Motor Acceptance Company LLC ("Nissan" or "Defendant Nissan," and collectively with the Credit Bureau Defendants, the "Defendants"), and states as follows:

## INTRODUCTION

1.     The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

2.     However, unfortunately this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can and do sustain substantial damage, both economically and emotionally, whenever inaccurate or fraudulent information is disseminated and/or obtained about them. In fact, the Credit Bureau Defendants acknowledge this potential for misuse and resulting damage every time they sell their respective credit monitoring services to a consumer.

3.     The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

*Amelia Escobar v. Experian Information Solutions Inc., et al.*
COMPLAINT

4.     These CRAs sell information to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, and other similar interested parties), commonly called "consumer reports," concerning individuals who may be applying for retail credit, housing, employment, or a car or mortgage loan.

5.     Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private, and financial information that they compile and sell about individual consumers.

6.     One of the primary purposes in requiring CRAs to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

See 15 U.S.C. § 1681(a)(1).

7.     The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

[W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 cong. Rec. 36570 (1970)] (emphasis added).

8.    The FCRA also requires CRAs to conduct a reasonable reinvestigation to determine whether information disputed by consumers is inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which the CRA receives the notice of dispute from the consumer. This mandate exists to ensure that consumer disputes are handled in a timely manner and that inaccurate information contained

*Amelia Escobar v. Experian
Information Solutions Inc., et al.*
COMPLAINT

within a consumer's credit report is corrected and/or deleted so as to not prevent said consumer from benefiting from his or her credit and obtaining new credit.

9.    In light of these important findings and purposes, Congress specifically noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." *See* 15 U. S.C. § 1681(a)(4).

10.    The FCRA also requires furnishers of information, a creditor or other third party that provides information about consumer to a CRA, upon notice, to conduct a reasonable reinvestigation of all disputes with regard to the completeness or accuracy of any information it provides to the CRAs regarding a consumer and modify, delete, or permanently block any items of information found to be inaccurate, incomplete, or unverifiable after said reinvestigation is completed.

11.    Plaintiff's claims arise out of the Credit Bureau Defendants' blatantly inaccurate credit reporting, wherein the Credit Bureau Defendants reported to Plaintiff's potential creditors that Plaintiff owed a balance to Nissan which she had already paid off.

12.    Accordingly, Plaintiff brings claims against the Credit Bureau Defendants for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiffs credit reports, in violation of the FCRA, 15 U.S.C. § 1681e(b), and failing to conduct a reasonable reinvestigation to determine whether

information Plaintiff disputed was inaccurate and record the current status of the disputed information, or delete the disputed information from Plaintiffs credit file, in violation of the FCRA, 15 U.S.C. § 1681i.

13.     Plaintiff also brings a claim against Defendant Nissan for failing to fully and properly reinvestigate Plaintiff's disputes and review all relevant information provided by Plaintiff and the Credit Bureau Defendants, in violation of the FCRA, 15 U.S.C. § 1681s-2(b)(1).

14.     As part of this action, Plaintiff seeks actual, statutory, and punitive damages, costs and attorneys' fees from Defendants for their willful and/or negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*., as described herein.

## **PARTIES**

15.     Amelia Escobar ("Plaintiff" or "Ms. Escobar") is a natural person residing in Cape Coral, Florida, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

16.     Defendant Equifax Information Services, LLC. ("Defendant Equifax" or "Equifax") is a limited liability company with a principal place of business located at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309, and is authorized to do business in the State of Florida, including within this District. Equifax may be served

at its registered agent address at Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

17.     Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

18.     Defendant Experian Information Solutions, Inc. ("Defendant Experian" or "Experian") is a corporation with a principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626, and is authorized to do business in the State of Florida, including within this District. Experian can be served at its registered agent address at CT Corporation System, 330 N. Brand Blvd, Glendale, CA, 91203.

19.     Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Experian is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

20.     Defendant Trans Union LLC ("Defendant Trans Union" or "Trans Union") is a limited liability company with a principal place of business located at 555 West Adams Street, Chicago, Illinois 60661, and is authorized to do business in the State of Florida, including within this District. Trans Union can be served at its

registered agent address at Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, IL 62703.

21.     Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Trans Union is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

22.     Defendant Nissan Motor Acceptance Company LLC ("Nissan" or "Defendant Nissan") is an auto finance company formed in the State of Delaware, with its principal place of business at One Nissan Way Franklin, TN 37067, has a Registered Address in Florida at c/o Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301, and is authorized to do business in the State of Florida, including within this District.

23.     Defendant Nissan is a credit grantor and "furnisher" of consumer information, as defined in 15 U.S.C. § 1681s-2(b).

## JURISDICTION AND VENUE

24.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

25.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTS

### Summary of the Fair Credit Reporting Act

26.     The FCRA governs the conduct of consumer reporting agencies in an effort to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

27.     The FCRA was designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681(a).

28.     Specifically, the statute was intended to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. *See* 15 U.S.C. § 1681(b).

29.    To that end, the FCRA imposes the following twin duties on consumer reporting agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports (15 U.S.C. § 1681e(b)); and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies (15 U.S.C. § 1681i).

30.    The FCRA provides consumers with a private right of action against consumer reporting agencies that willfully or negligently fail to comply with their statutory obligations under the FCRA.

### Factual Background

31.    The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

32.    The Credit Bureau Defendants sell millions of consumer reports (often called "credit reports" or "reports") per day, and also sell credit scores.

33.    Pursuant to 15 U.S.C. § 1681e(b), consumer reporting agencies, like the Credit Bureau Defendants, are required "to follow reasonable procedures to assure

10/42

maximum possible accuracy of the information concerning the individual about whom the report relates."

34.     Pursuant to 15 U.S.C. §§ 1681b and 1681e(a), consumer reporting agencies, like the Credit Bureau Defendants, must maintain reasonable procedures to assure that consumer reports are sold only for legitimate "permissible purposes."

35.     The Credit Bureau Defendants' consumer reports generally contain the following information:

      (a)    Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers;

      (b)    Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status;

      (c)    Public Record Information: this section typically includes public record information, such as bankruptcy filings; and,

      (d)    Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

36.     The Credit Bureau Defendants obtain consumer information from various sources.    Some consumer information is sent directly to the CRA by furnishers.

37.     The majority of institutions that offer financial services (e.g., banks, creditors, and lenders) rely upon consumer reports from CRAs (like the Credit Bureau Defendants) to make lending decisions.

38.     Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, and date of delinquencies contained in the Credit Bureau Defendants' consumer reports.

39.     The information the Credit Bureau Defendants include in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

40.     FICO Scores are calculated using information contained in the Credit Bureau Defendants' consumer reports.

41.     The Credit Bureau Defendants know that FICO and other third-party algorithms (as well as the algorithms owned by the Credit Bureau Defendants) use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

*Amelia Escobar v. Experian*
*Information Solutions Inc., et al.*
COMPLAINT

42.     The Credit Bureau Defendants know that lenders also consider a consumer's debt-to-income ratio (DTI) before deciding to extend credit or approve financing terms.

43.     DTI compares the total amount a consumer owes to the total amount a consumer earns.

44.     The higher the amount of reported debt that a consumer has, or appears to have, or is rather *reported* to have, the less favorable the consumer's DTI will be, and the more difficult it will be for a consumer to obtain credit and favorable credit terms. Rather, if offered credit at all, consumers will be offered less credit and at higher interest rates.

45.     The Credit Bureau Defendants routinely report inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating it as required by Section 1681e(b) of the FCRA.

46.     The Credit Bureau Defendants fail to employ reasonable procedures to assure the maximum possible accuracy of the information that they report about consumers, including but not limited to, account balances, account statuses, payment histories, and payment statuses.

47.     Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau Complaints against the Credit Bureau Defendants for their inaccurate credit reporting.

*Amelia Escobar v. Experian
Information Solutions Inc., et al.*
COMPLAINT

48.    Thus, the Credit Bureau Defendants are on continued notice of their respective inadequate reporting procedures.    Specifically, the Credit Bureau Defendants are on notice that their inadequate procedures regularly result in the reporting of inaccurate balances, account statuses, payment histories, and payment statuses.

49.    The Credit Bureau Defendants have received and documented many disputes from consumers complaining that Credit Bureau Defendants reported inaccurate information about them.

**Plaintiff Enters into a Lease for a Nissan Altima**

50.    On or about May 30, 2014, Plaintiff entered into a three-year lease agreement for a 2014 Nissan Altima with Nissan-Infinity LT LLC (the "Dealership"), which was financed by Defendant Nissan.

51.    Plaintiff made her monthly payments on time for the entire duration of the lease.

52.     When returning the vehicle on March 31, 2017, the last day of her lease agreement, a representative at the Dealership informed Plaintiff that she owed a balance for excess milage. Plaintiff explained to the sales representative that she planned on purchasing a Nissan Sentra.

*Amelia Escobar v. Experian*
*Information Solutions Inc., et al.*
COMPLAINT

53.     Thereafter, the representative told Plaintiff that they would pay off the balance for the excess milage and apply that balance towards a Nissan Sentra if she was to purchase a vehicle from them.

### Plaintiff Purchases a Nissan Sentra from the Dealership

54.     On March 31, 2017, Plaintiff bought a Nissan Sentra from the Dealership and gave a down payment in the amount of $2,500.00.

55.     Accordingly, the Dealership representative advised Plaintiff the balance of her lease account (the "Account") would be removed in 4-6 weeks.

56.     Sometime after completing the purchase of the Nissan Sentra, Plaintiff learned that the balance for the excess milage was still reporting as unpaid.

57.     Upon learning this information, Plaintiff went to the Nissan dealership on three (3) separate occasions to try to correct this information, and a representative from the Dealership reassured Plaintiff that the balance on her Account for the excess milage had been paid off.

58.     Thereafter, Plaintiff never received anything invoices or collection letters from Defendant that she owed a balance for the excess milage. Plaintiff believed that the issue was resolved.

59.     Upon information and belief, the Dealership paid off the balance of the Account for the excess milage.

//

**Defendants Report that Plaintiff Owes a Balance to the Dealership**

60.     In or around September 2023, Plaintiff was contemplating purchasing a new home and wanted to review her credit reports to ensure everything was reporting accurately.

61.     On or about September 4, 2023, Plaintiff reviewed her credit reports, and noticed that each Credit Bureau Defendants were reporting the balance on the lease Account in the amount of $2,912.00..

62.     Upon information and belief, Defendant Nissan reported to the Credit Bureau Defendants that Plaintiff still owes a balance in the amount of $2,912.00 to the Dealership in relation to the excess milage.

63.     The Credit Bureau Defendants reported the Account in Plaintiff's credit file and consumer reports.

64.     Plaintiff was distressed by this information and was nervous that any future mortgage application would result in unfavorable financing terms, or even denial, due to Defendants' inaccurate reporting.

65.      Accordingly, Plaintiff reached out to the Dealership to try to resolve the inaccuracy.

66.     On or about September 19, 2023, the Dealership sent Plaintiff a letter (the "Proof of Payment Letter") stating that Plaintiff's vehicle was paid in full, and her lien had been satisfied as of July 14, 2017.

*Amelia Escobar v. Experian Information Solutions Inc., et al.*
COMPLAINT

**Plaintiff's First Dispute to the Credit Bureau Defendants Regarding the Inaccurate Credit Reporting**

67.     On or about October 11, 2023, extremely shocked, surprised, and embarrassed at the Credit Bureau Defendants' inaccurate reporting, Plaintiff disputed the Account balance with Defendant Nissan in relation to the Account with each of the Credit Bureau Defendants via first-class mail (the "October 2023 Dispute").

68.     Plaintiff explained that the balance owed for the excess milage was resolved at the time she purchased the Nissan Sentra, which was paid in full directly by the Dealership.  Plaintiff provided her date of birth, address and last four digits of her social security number for proof of identity, and also attached the Proof of Payment Letter to each dispute.

69.     Plaintiff requested that Equifax, Experian, and Trans Union reinvestigate the disputed information, correct the reporting, and for each to send her a corrected copy of her credit report.

**Defendant Equifax's Unreasonable Dispute Reinvestigation**

70.     Upon information and belief, Equifax sent Defendant Nissan an automated credit dispute verification ("ACDV") pursuant to Plaintiff's October 2023 Dispute to Equifax.

*Amelia Escobar v. Experian Information Solutions Inc., et al.*
COMPLAINT

71.    Upon information and belief, Defendant Equifax failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

72.    Upon information and belief, Defendant Equifax failed to conduct a reasonable reinvestigation of Plaintiff's October 2023 Dispute. Defendant Equifax replied to the October 2023 Dispute that "THE BALANCE . . . HAS BEEN UPDATED"; however, the balance remained the same.

73.    Defendant Equifax failed to correct or delete the Account, which was still appearing in Plaintiff's credit file.

74.    Equifax failed to conduct a reasonable reinvestigation of Plaintiff's October 2023 Dispute, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**Defendant Experian's Unreasonable Dispute Reinvestigation**

75.    Upon information and belief, Experian failed to send Defendant Nissan an automated credit dispute verification ("ACDV") pursuant to Plaintiff's October 2023 Dispute to Experian.

76.    Upon information and belief, Defendant Experian failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

77.     Upon information and belief, Defendant Experian failed to conduct a reasonable reinvestigation of Plaintiff's October 2023 Dispute. Experian replied that the October 2023 Dispute did not appear to have been sent directly by Plaintiff.

78.      Defendant Experian failed to correct or delete the Account, which was still appearing in Plaintiff's credit file.

79.     Experian failed to conduct a reasonable reinvestigation of Plaintiff's October 2023 Dispute, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**Defendant Trans Union's Unreasonable Dispute Reinvestigation**

80.     Upon information and belief, Trans Union sent Defendant Nissan an automated credit dispute verification ("ACDV") pursuant to Plaintiff's October 2023 Dispute to Trans Union.

81.     Upon information and belief, Defendant Trans Union failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

82.     Upon information and belief, Defendant Trans Union failed to conduct a reasonable reinvestigation of Plaintiff's October 2023 Dispute.

83.     Although Defendant Trans Union updated the Account by changing the account balance from $2,912.00 to $0.00, Trans Union also erroneously left a remark

which stated "Settled-Less than full balance." Plaintiff did not settle the Account for less than full balance. The Account was paid in full, and Plaintiff did not owe any balance for it to be settled for less than full balance.

84.     Therefore, Defendant Trans Union failed to correct or delete the Account with Defendant Nissan, which was still appearing in Plaintiff's credit file.

85.     Trans Union failed to conduct a reasonable reinvestigation of Plaintiff's October 2023 Dispute, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

## The Credit Bureau Defendants' Method for Considering Consumer Credit Report Disputes

86.     The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. See 15 U.S.C. § 1681i(a)(5)(D).

87.     The credit bureaus, Equifax, Experian, Trans Union, and Innovis, have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows the credit bureaus to create and data furnishers to respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

*Amelia Escobar v. Experian*
*Information Solutions Inc., et al.*
COMPLAINT

88.   That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro 2 Format" or "Metro 2."

89.   It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

90.   Metro 2 is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

91.   Metro 2 codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV") electronic form.

92.   The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

93.   These ACDV "fields" have various titles for the many substantive areas into which the Metro 2 codes can be entered.

94.   Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

95.     The data furnishers, like Defendant Nissan, then have an obligation under the FCRA to conduct a reasonable reinvestigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether the disputed credit account information is accurate and/or belongs to the disputing consumer. See 15 U.S.C. § 1681s-2(b).

96.     Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and return the ACDV to the respective credit bureau(s) via e-OSCAR.

**Defendant Nissan's Unreasonable Dispute Reinvestigation**

97.     Upon information and belief, in or about October 2023, Defendant Nissan received Defendant Equifax's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

98.     Upon information and belief, Defendant Nissan failed to review all relevant information provided by Defendant Equifax regarding Plaintiff's October 2023 Dispute.

99.     Upon information and belief, Defendant Nissan verified the disputed information as accurate to Defendant Equifax in or about October 2023.

100.   Upon information and belief, in or about October 2023, Defendant Nissan received Defendant Trans Union's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

101.   Upon information and belief, Defendant Nissan failed to review all relevant information provided by Defendant Trans Union regarding Plaintiff's October 2023 Dispute.

102.   Upon information and belief, in or about October 2023, Defendant Nissan continued to furnish inaccurate information to Defendant Trans Union and informed Defendant Trans Union that the disputed Account existed, was not fully paid off as Plaintiff's supporting documentation demonstrated, and that the account balance was settled for less than the amount owed.

Defendant Nissan violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to modify, delete, or permanently block the disputed information that was inaccurate, incomplete or unverifiable.

### Plaintiff's Second Dispute to the Credit Bureau Defendants Regarding the Inaccurate Credit Reporting

103.   As of January 2024, Defendant Equifax was reporting that Plaintiff owed a balance on the Account.

*Amelia Escobar v. Experian*
*Information Solutions Inc., et al.*
COMPLAINT

104.   As of January 2024, Defendant Experian was reporting that Plaintiff owed a balance on the Account.

105.   As of January 2024, Defendant Trans Union was reporting the Account with a remark stating "Settled-Less than full balance."

106.   On or about January 9, 2024, extremely shocked, surprised, and embarrassed at the Credit Bureau Defendants' inaccurate reporting, Plaintiff disputed the Account with each of the Credit Bureau Defendants via mail (the "January 2024 Dispute")

107.   Plaintiff explained that the balance owed for the milage overages was applied towards the purchase price of the Nissan Sentra, which was paid in full. Plaintiff provided her date of birth, address and last four digits of her social security number for proof of identity, and also attached the Proof of Payment Letter to each dispute. This time Plaintiff also provided a copy of her driver's license and a snapshot of a bank statement with her address on it.

108.   Plaintiff requested that Equifax, Experian, and Trans Union reinvestigate the disputed information, correct the reporting, and for each to send her a corrected copy of her credit report.

//

//

**Defendant Equifax's Unreasonable Reinvestigation**

109.  Upon information and belief, Defendant Equifax failed to send Defendant Nissan an automated credit dispute verification ("ACDV") pursuant to Plaintiff's January 2024 Dispute to Defendant Equifax.

110.  Upon information and belief, Defendant Equifax failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

111.  In response to Plaintiff's January 2024 Dispute, Equifax sent Plaintiff a letter stating that it was unable to locate her file.

112.  Upon information and belief, Defendant Equifax failed to conduct a reasonable reinvestigation of Plaintiff's January 2024 Dispute.

113.  Thereafter, Defendant Equifax failed to correct or delete the Account appearing in Plaintiff's credit file.

114.  Defendant Equifax failed to conduct a reasonable reinvestigation of Plaintiff's January 2024 Dispute, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

*Amelia Escobar v. Experian*
*Information Solutions Inc., et al.*
COMPLAINT

**Defendant Experian's Unreasonable Reinvestigation**

115.   Upon information and belief, Defendant Experian failed to send Defendant Nissan an automated credit dispute verification ("ACDV") pursuant to Plaintiff's January 2024 Dispute to Defendant Experian.

116.   Upon information and belief, Defendant Experian failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

117.   Upon information and belief, Defendant Experian failed to conduct a reasonable reinvestigation of Plaintiff's January 2024 Dispute. Once again, and even though Plaintiff included her driver's license and bank statement snapshot as extra proof of identification, Experian replied that the January 2024 Dispute did not appear to have been sent directly by Plaintiff.

118.    Defendant Experian failed to correct or delete the Account, which was still appearing in Plaintiff's credit file.

119.   Defendant Experian failed to conduct a reasonable reinvestigation of Plaintiff's January 2024 Dispute, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**Defendant Trans Union's Unreasonable Reinvestigation**

120.   Upon information and belief, Defendant Trans Union failed to send Defendant Nissan an automated credit dispute verification ("ACDV") pursuant to Plaintiff's January 2024 Dispute to Defendant Trans Union.

121.   Upon information and belief, Defendant Trans Union failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

122.   Upon information and belief, Defendant Trans Union failed to conduct a reasonable reinvestigation of Plaintiff's January 2024 Dispute. This time Trans Union replied that the January 2024 Dispute did not appear to have been sent directly by Plaintiff.

123.    Defendant Trans Union failed to correct or delete the Account, which was still appearing with the remark in Plaintiff's credit file.

124.   Defendant Trans Union failed to conduct a reasonable reinvestigation of Plaintiff's January 2024 Dispute, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**Plaintiff's Third Dispute to the Credit Bureau Defendants
Regarding the Inaccurate Credit Reporting**

125.   As of February 2024, Defendant Equifax was reporting that Plaintiff owed a balance on the Account.

126.   As of February 2024, Defendant Experian was reporting that Plaintiff owed a balance on the Account.

127.   As of March 2024, Defendant Trans Union was reporting that Plaintiff owed a balance on the Account.

128.   On or about February 9, 2024, extremely frustrated, and embarrassed at the Credit Bureau Defendants' inaccurate reporting, Plaintiff disputed the Account with each of the Credit Bureau Defendants (the "February 2024 Dispute").

129.   Plaintiff explained that the balance owed for the milage overages was applied towards the purchase price of the Nissan Sentra, which was paid in full. Plaintiff provided her date of birth, address and last four digits of her social security number for proof of identity, and also attached the Proof of Payment Letter to each dispute. Plaintiff also provided a copy of her driver's license and a snapshot of a bank statement with her address on it. In addition, in the February 2024 Dispute sent to Experian and Trans Union, Plaintiff attached a copy of the letter sent to her from the corresponding Defendants stating that they believe someone without authority sent a recent request about Plaintiff's credit information.

130.   Plaintiff requested that Equifax, Experian, and Trans Union reinvestigate the disputed information, correct the reporting, and for each to send her a corrected copy of her credit report.

*Amelia Escobar v. Experian*
*Information Solutions Inc., et al.*
COMPLAINT

**Defendant Equifax's Unreasonable Reinvestigation**

131.   Upon information and belief, Defendant Equifax sent Defendant Nissan an automated credit dispute verification ("ACDV") pursuant to Plaintiff's February 2024 Dispute to Defendant Equifax.

132.   Upon information and belief, Defendant Equifax failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

133.   Upon information and belief, Defendant Equifax failed to conduct a reasonable reinvestigation of Plaintiff's February 2024 Dispute.

134.   Thereafter, Defendant Equifax failed to correct or delete the Account, which was still appearing in Plaintiff's credit file.

135.   Defendant Equifax failed to conduct a reasonable reinvestigation of Plaintiff's February 2024 dispute, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**Defendant Experian's Unreasonable Reinvestigation**

136.   Upon information and belief, Defendant Experian sent Defendant Nissan an automated credit dispute verification ("ACDV") pursuant to Plaintiff's February 2024 Dispute to Defendant Experian.

137.   Upon information and belief, Defendant Experian failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

138.   Upon information and belief, Defendant Experian failed to conduct a reasonable reinvestigation of Plaintiff's February 2024 Dispute.

139.   Thereafter, Defendant Experian failed to correct or delete the Account, which was still appearing in Plaintiff's credit file.

140.   Defendant Experian failed to conduct a reasonable reinvestigation of Plaintiff's February 2024 Dispute, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

## Defendant Trans Union's Unreasonable Reinvestigation

141.   Upon information and belief, Defendant Trans Union sent Defendant Nissan an automated credit dispute verification ("ACDV") pursuant to Plaintiff's February 2024 Dispute to Defendant Trans Union.

142.   Upon information and belief, Defendant Trans Union failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

143.   Upon information and belief, Defendant Trans Union failed to conduct a reasonable reinvestigation of Plaintiff's February 2024 Dispute.

*Amelia Escobar v. Experian*
*Information Solutions Inc., et al.*
COMPLAINT

144.   Thereafter, Defendant Trans Union failed to correct or delete the Account, which was still appearing in Plaintiff's credit file, but now again showing a balance of $2,912.00.

145.   Defendant Trans Union failed to conduct a reasonable reinvestigation of Plaintiff's February 2024 Dispute, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

## Defendant Nissan's Unreasonable Dispute Reinvestigation

146.   Upon information and belief, in or about February 2024, Defendant Nissan received Defendant Equifax's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

147.   Upon information and belief, Defendant Nissan failed to review all relevant information provided by Defendant Equifax regarding Plaintiff's February 2024 Dispute.

148.   Upon information and belief, in or about February 2024, Defendant Nissan verified the disputed information as accurate to Defendant Equifax.

149.   Upon information and belief, in or about February 2024, Defendant Nissan received Defendant Experian's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

*Amelia Escobar v. Experian*
*Information Solutions Inc., et al.*
COMPLAINT

150.   Upon information and belief, Defendant Nissan failed to review all relevant information provided by Defendant Experian regarding Plaintiff's February 2024 Dispute.

151.   Upon information and belief, in or about February 2024, Defendant Nissan verified the disputed information as accurate to Defendant Experian.

152.   Upon information and belief, in or about February 2024, Defendant Nissan received Defendant Trans Union's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

153.   Upon information and belief, Defendant Nissan failed to review all relevant information provided by Defendant Trans Union regarding Plaintiff's February 2024 Dispute.

154.   Upon information and belief, in or about February 2024, Defendant Nissan verified the disputed information as accurate to Defendant Trans Union and stated further that a balance of $2,912.00 was owed on the Account.

155.   Defendant Nissan violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to correct, modify, delete, or permanently block the disputed information that was inaccurate, incomplete or unverifiable.

156.   Plaintiff reasonably believes that Defendant Nissan continued to furnish data to the national credit bureaus inaccurately suggesting that Plaintiff owed the Dealership $2,912.00.

157.   Plaintiff reasonably believes that the Credit Bureau Defendants continued to inaccurately publish that Plaintiff had a balance of $2,912.00 on the Account at some point between October 2023 and April 2024.

158.   At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

159.   At all times pertinent hereto, the conduct of Defendants, as well as that of their respective agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

160.   As a standard practice, the Credit Bureau Defendants do not conduct independent investigations in response to consumer disputes.  Instead, they merely parrot the response of the credit furnisher despite numerous court decisions admonishing this practice.  *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) (The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources.

Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230-31 (D.N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

161.   The Credit Bureau Defendants are aware of the shortcomings of their procedures and intentionally choose not to comply with the FCRA to lower their costs.   Accordingly, the Credit Bureau Defendants' violations of the FCRA are willful.

### Plaintiff is Suffering as a Result of Defendants' Conduct

162.   Defendants' inaccurate reporting, unreasonable investigations, and repeated failures to correct such reporting has caused Plaintiff to put off buying a new home.

163.   Furthermore, upon information and belief, Plaintiff's received less favorable terms on her Capital One credit card than she otherwise would have had it not been for the inaccurate reporting concerning the Account. Upon information and belief, on or about December 14, 2023, Defendant Trans Union published and sold a report to Capital One in response to Plaintiff's credit card application.

164.   Moreover, as a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, and humiliation.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure
### Maximum Possible Accuracy
### (First Claim for Relief Against Credit Bureau Defendants)

165.   Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

166.   The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates.

15 U.S.C. §1681e(b) (emphasis added).

*Amelia Escobar v. Experian*
*Information Solutions Inc., et al.*
COMPLAINT

167.   On numerous occasions, Defendants Equifax, Experian, and Trans Union prepared patently false consumer reports concerning Plaintiff.

168.   Defendants Equifax, Experian, and Trans Union readily sold such false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

169.   Defendant Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

170.   Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

171.   Defendant Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

172.   As a result of Defendants' Equifax, Experian, and Trans Union conduct, action, and inaction, Plaintiff suffered damage by loss of credit; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the

expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, and humiliation.

173.   Defendants Equifax, Experian, and Trans Union's conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

174.   Plaintiff is entitled to recover attorneys' fees and costs from Defendants Equifax, Experian, and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II

### 15 U.S.C. § 1681i
### Failure to Perform a Reasonable Reinvestigation
### (Second Claim for Relief Against Credit Bureau Defendants)

175.   Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

176.   The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer.  *See* 15

U.S.C. § 1681i(a)(1).  The Act imposed a 30-day time limit for the completion of such an investigation.  *Id*.

177.   The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file.  *See* 15 U.S.C. § 1681i(a)(5)(A).

178.   On at least one occasion during the past two years, Plaintiff disputed the inaccurate information with Equifax, Experian, and Trans Union and requested that they correct and/or delete a specific item in her credit file that is patently inaccurate, misleading, and highly damaging to her, namely, the Account which showed that Plaintiff had a balance of $2,912.00 in relation to Plaintiff's lease account with the Dealership.

179.  In response to Plaintiff's dispute, Equifax failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in Plaintiff's credit file.

180.  In response to Plaintiff's dispute, Experian failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in Plaintiff's credit file.

181.   In response to Plaintiff's dispute, Trans Union failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in Plaintiff's credit file.

182.   The Credit Bureau Defendants violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

183.   As a result of the Credit Bureau Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, and humiliation.

184.   The Credit Bureau Defendants' conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

185.   Plaintiff is entitled to recover attorneys' fees and costs from Defendants Equifax, Experian, and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT III

### 15 U.S.C. § 1681s-2(b)
### Failure to Conduct an Investigation of the Disputed Information and Review all Relevant Information Provided by the Consumer
### (Only Claim for Relief Against Defendant Nissan)

186.   Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

187.   Defendant Nissan furnished the inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Equifax, Experian, and Trans Union.

188.   Defendant Nissan violated 15 U.S.C. § 1681s-2(b) by failing to investigate Plaintiff's dispute, or otherwise by failing to fully and properly investigate Plaintiff's dispute(s), including but not limited to failing to review all relevant information regarding the same; by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Equifax, Experian, and Trans Union; and, by failing to cease furnishing

*Amelia Escobar v. Experian Information Solutions Inc., et al.*
COMPLAINT

inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Equifax, Experian, and Trans Union.

189.   As a result of Defendant Nissan's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, and humiliation.

190.   Defendant Nissan's conduct, action, and inaction were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

191.   Plaintiff is entitled to recover attorneys' fees and costs from Defendant Nissan in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i.    Determining that Defendants negligently and/or willfully violated the FCRA;

ii.    Awarding Plaintiff actual, statutory, and punitive damages as provided by the

FCRA;

iii.    Awarding Plaintiff reasonable attorneys' fees and costs as provided by the

FCRA; and,

iv.    Granting further relief, in law or equity, as this Court may deem appropriate

and just.

## **DEMAND FOR JURY TRIAL**

Plaintiff is entitled to and hereby demands a trial by jury on all issues so

triable.

RESPECTFULLY SUBMITTED this 21ˢᵗ day of May 2024,

**CONSUMER ATTORNEYS**

*/s/ Catherine Tillman*
Catherine Tillman, Esq., FL #0057663
CONSUMER ATTORNEYS
8245 N. 85th Way
Scottsdale, AZ 85258
T: (941) 263-7310
F: (718) 715-1750
E: ctillman@consumerattorneys.com

*Attorneys for Plaintiff,*
*Amelia Escobar*

*Amelia Escobar v. Experian*
*Information Solutions Inc., et al.*
COMPLAINT